| | |
|---|---|
| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION |

| | | |
|---|---|---|
| TREYVION GRAY, | § | |
| | § | |
| *Plaintiff(s)*, | § | |
| | § | |
| v. | § | No. 4:22-cv-01245 |
| | § | Jury |
| NEEDVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| | § | |
| *Defendant(s)*. | § | |

## PLAINTIFF TREYVION GRAY'S FIRST AMENDED COMPLAINT[1]

Plaintiff Treyvion Gray (referred to as "Gray") brings this action under 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972 against Defendant Needville Independent School District (referred to as "NISD"). As explained below, NISD violated Gray's clearly established constitutional rights and has imposed immense and irreparable harm on Gray, who was, until his graduation, a student at Needville High School.

---

[1] NISD consents to the filing of the amended complaint but reserves the right to move to dismiss it.

## I. Nature of Suit

1.      Black NISD students, including Gray, have been and continue to be disproportionately targeted and penalized for violating NISD's Dress and Hair Policy that are race-neutral and facially discriminatory on the basis of gender and that are designed to, and have the effect of, profiling, singling out, and burdening Black male students for wearing their hair in its natural state, including in locs.[2] The length of locs have no bearing on NISD Black students' capacity to learn, yet the wholly arbitrary Dress and Hair Policy restricts the mobility of Black students in public and private spaces, deny them equal educational opportunities, and strike at the freedom and dignity of the NISD Black student population.

2.      NISD's Dress and Hair Policy forces Black students, including Gray, to choose between wearing their hair in natural formations and suffering discipline and the depravation of education opportunities, on the one hand, or conforming their hair to Eurocentric hair norms to receive the same educational opportunities as their white counterparts, on the other hand.

3.      Gray began growing his locs as a sophomore at NISD.

---

[2] The term "locs" is used in this Complaint rather than "dread locks." The term "dread" in the word "dread locks" comes from the word "dreadful" used by English slave traders to refer to Africans' hair, which it is surmised had loc'd naturally on its own during the Middle Passage. *See* April Williams, *My Hair is Professional Too! A Case Study and Overview of Laws Pertaining to Workplace Grooming Standards and Hairstyles Akin to African Culture*, 12 S. J. POL'Y & JUST. 138, 165-66 (2018).

4.     Gray's locs are expression of his Black identity and culture. His locs have never disrupted NISD's educational environment or hindered his academic or extracurricular advancement.

5.     Less than three months from Gray's graduation in the 2021-2022 school year, NISD administrators, specifically Principal Steve Adamson and Assistant Principal Derek Maresh, have made it their objective to suppress Gray's expression of his identity and heritage through his natural hair by (1) continually monitoring and targeting Gray's hair; (2) promulgating and selectively enforcing arbitrary and discriminatory hair policies to force Gray to cut his culturally significant locs; (3) punishing Gray for refusing to cut his locs, by, among other things, isolating him from the student population and placing him in in school suspension ("ISS"), threatening to place him disciplinary alternative education program ("DAEP") and prohibiting him from participating in extracurricular events and activities, including his upcoming commencement ceremony.

6.     The Dress Code and Hair Policy crafted and enforced by NISD has no legitimate purpose, is wholly arbitrary, and impermissibly regulates how students can wear their hair at school. NISD's promulgation and selective enforcement of this policy constitutes an unlawful and intentionally discriminatory violation of Plaintiff's constitutional rights, as well as other laws.

7.     NISD administrators did not target and surveil non-Black students in the way they monitored Gray. The District's regular monitoring and inspection of Gray ostracized him and singled him out from his white classmates.

8.     NISD continues to engage in this mission to force Gray to cut his culturally significant locs because NISD views his natural Black hair as contrary to NISD's "conservative standards."

9.     NISD's Dress Code and Hair Policy is wholly arbitrary, intentionally discriminatory based on race and gender (including facially discriminatory language on the basis of gender), and unfairly and selectively enforced against Black male students. There is no legitimate educational motive or goal furthered by the Hair Policy's requirement that male students' hair comply with an arbitrary length requirement or NISD's discriminatory conduct against Gray.

13.     NISD's promulgation and enforcement of its Dress Code and Hair Policy, is unlawful, discriminatory, and violates Plaintiff's constitutional rights, as well as other laws. Plaintiff brings this action against NISD for:

a.     Race discrimination in violation of the Fourteenth Amendment right to equal protection;

b.     Race discrimination in violation of Title VI of the Civil Rights Act 1964,

c.     42 U.S.C. § 2000d *et seq.* ("Title VI");

d.   Sex discrimination in violation of the Fourteenth Amendment right to equal protection;

c.   Sex discrimination in violation of Title IX the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX");

d.   Declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202; and

e.   Violation of the First Amendment right to free speech.

14.   Accordingly, Plaintiff seeks (1) declaratory relief announcing that NISD's dress code, including the hair policy, violates state and federal law; (2) an order enjoining NISD from enforcing its Dress Code and Hair Policy; (3) an order enjoining NISD from discriminatorily enforcing its Dress Code and Hair Policy; (4) an order expunging any disciplinary sanctions that may be contained in Plaintiff's school records related to the dress codes and hair policy and (5) compensatory damages for the injuries caused by NISD's unlawful conduct.

## II. Jurisdiction & Venue

15.   This action arises under a federal statute, 42 U.S.C. § 1983. 28 U.S.C. § 1331 (federal-question jurisdiction). This Court also has jurisdiction under 28 U.S.C. § 1343(a) because Plaintiff seeks damages for violations of his civil rights.

16.   This action seeks to redress the deprivation of rights, privileges, and/or immunities guaranteed by the United States Constitution, 28 U.S.C. § 1343, Title VI

of the Civil Rights Act of 1964, 42 U.S.C. §2000d *et seq.*, Title IX of the Education Amendments of 192, 20 U.S.C. §1681 *et seq.*, and 28 U.S.C. §2201 *et seq.*.

17.     Venue is proper in this district and division because events giving rise to this action occurred in this district and division. 28 U.S.C. § 1391(b)(1).

### III. Parties

18.     Treyvion Gray is an individual who resides in Fort Bend County, Texas.

19.     Defendant Needville Independent School District is a public school district in Fort Bend County, Texas, where Needville High School is located. NISD receives federal financial assistance for its programs, services, and activities. NISD is a political subdivision of the State of Texas that has been served with process and has appeared.

### IV.  Facts

**A.     NISD's and Its History of Discrimination**

20.     NISD is a school district in Needville, Texas, approximately 45 miles west of Houston, Texas.

21.     NISD has a total population of approximately 3,306 students, 55% of which is white, 39% of which is Hispanic and just 3% is Black. *See*, https://nces.ed.gov/Programs/Edge/ACSDashboard/4832310.

22.     NISD receives a total of $11,984 in revenue per student each year. *See*, https://nces.ed.gov/edfin/search/peergroupdata.asp?dataid=1&mt=0&subdataid=1&bleaid=4832310&jobid={5E276590-5DB6-4200-A10C-63E1ACBB500E}. $573 is from federal sources, $5,000 is from state sources and $6,411 is from local sources, including property and non-property taxes. *Id*.

23.     NISD has one high school, one junior high school, on middle school and one elementary school.

24.     In 2008, NISD placed a Native American kindergarten student In School Suspension ("ISS") because of his hair length. The child's parents filed suit against NISD and ultimately, Judge Keith P. Ellison granted plaintiff's preliminary injunction against NISD from enforcing its dress code, including its hair policy for male students. *A.A. v. Needville Indep. Sch. Dist*., 701 F. Supp. 2d 863 (S.D. Tex. Jan. 20, 2009) (The Court held that the child succeeded in his free exercise claim under Texas Religious Freedom Restoration Act). The Fifth Circuit affirmed the district court's judgment. *A.A. v. Needville Indep. Sch. Dist*., 611 F. 3d 248 (July 9, 2010).

25.     Superintendent Curtis Rhodes ("Superintendent Rhodes), who was the superintendent during NISD's previous lawsuit challenging the school's hair policy and who currently serves as superindent of NISD, prides himself on the school's conservative dress policy. He was quoted about NISD's hair policy,

Rhodes says. "A school district is a reflection of the community. consistently been very conservatively dressed, very conservatively disciplined. It's no secret what our is: You'll cut your hair to the right point. You'll tuck in your shirt. You'll have a belt."

"If you want to think we're backwards...no one is asking you to move to Needville and have these opinions invoked on you," Rhodes says. "All the kids I graduated with — there's a bunch of us back in Needville — we never thought we'd come back. Backwards isn't all that bad when you become the parent."

"I've got a lot of friends that are Native-American Indians from Oklahoma, South Dakota, lot of places, some over in Louisiana in the Choctaw Nation, and they all cut their hair," Rhodes says. "We're not going to succumb to everything and just wash away our policies and procedures."

Ex. A, Paul Knight, *A Native American Family Fights Against Hair Length Rules*, Houston Press, July 10, 2008.

## A. NISD's Dress Code and Hair Policy Facially Discriminates Based on Gender

26.     On August 11, 2021, the NISD school board voted to approve the district's Student Code of Conduct and Student Handbooks for each of the schools, including the dress code for grades 7-12.

27.     The NISH 2021-2022 High School Student Handbook states,

Boys' hair shall **<u>NOT</u>** cover any part of the ears, extend beyond the eyebrows, or extend over the top of a standard collar in the back when combed down (even when not wearing a standard collar). Highlights/lowlights as well as hair accessories are **<u>NOT</u>** allowed for boys.

Ex. B, NISD Dress Code and Hair Policy for Grades 7-12.

28.    In addition to the Hair Policy that made the basis of this suit, NISD's

Dress Code contains other restrictions that treats students differently based on gender.

The NISD Dress Code for Grades 7-12 states:

- ALL shirts will be completely tucked in at all times. Girl's dress blouses may be worn untucked around the waist as designed as long as flesh is not showing when sitting, standing, bending or raising the arms.

- Boys are NOT allowed to wear dresses/skirts.

- Boys are NOT allowed to wear Capri pants, Knickers, or the like.

- Boys are NOT allowed to wear sandals, unless socks are worn.

- The wearing of any type of pierced jewelry anywhere on the body is NOT allowed except for girls wearing earrings in their ears.

- Boys may not wear makeup, nail polish, or color their fingernails.

Ex. B, NISD Dress Code and Hair Policy for Grades 7-12.

20. If students do not comply with these gender-based policies, the NISD

Handbook authorizes school administrators to engage in escalating punishments against

them:

If a student's apparel is considered inappropriate by the principal or his/her designee, the inappropriate item will be confiscated, the student will be allowed to call for other clothing or will be placed in a school issued corrective clothing to be worn for the rest of the day, and the student will immediately be issued a dress code referral and must attend after school detention. If a student receives more than four (4) after school detention referrals in a one week period, each additional referral that week will constitute persistent misbehavior and be handled as a Level II Disciplinary Offense. Any student unable or unwilling to correct the dress code violation may be placed ISS.

*Id.*

29.     The 2021-2022 NISD Student Conduct reinforces the Dress Code and Hair Policy, "Students shall not violate dress and grooming standards as communicated by the student handbook." Ex. C, NISD 2021-2022 Student Code of Conduct.

30.     If a student violates the gender-based Dress Code and Hair Policy, the NISD Student Code of Conduct empowers school administrators to remove students from campus and place them in the disciplinary alternative education program ("DAEP"). *Id.*

31.     NISD's stated justification for its Dress Code and Hair Policy is written in school district policy FNCA (Local), which was adopted by the NISD school board in May 2007: "The District's dress code is established to teach grooming and hygiene, instill discipline, prevent disruption, avoid safety hazards, and teach respect for authority." As further described below, these stated goals do not justify NISD's disparate treatment of Plaintiff based on gender.

32.     NISD's Dress Code and Hair Policy is based on impermissible gender stereotypes—namely, that short hair is more "masculine," more professional, and more conducive to traditionally male-dominated occupations and activities. The school district's requirement that boys must wear short hair reflects harmful generalizations about what constitutes typical and appropriate "masculine" behavior and appearance

standards for boys. In doing so, the policy also reinforces archaic assumptions about what constitutes "feminine" behavior and appearance standards for girls. NISD's gender-specific hair policy, therefore, constitutes unlawful gender discrimination.

**B.    NISD's Dress Code and Hair Policy Discriminates Based on Race**

33.    Pursuant to NISD's Board Policy Manual and Student Code of Conduct, Superintendent Rhodes and the NISD Board possess final authority to establish standards and policy with respect to student dress and grooming.

34.    NISD's Board, as the official policymaker for the school district, adopted a Dress Code and Hair Policy that targeted Gray and his natural hair growth, making it impossible for him to comply with the Dress Code and Hair Policy

35.    NISD's stated justification for its Dress Code and Hair Policy is written in school district policy FNCA (Local), which was adopted by the NISD school board in May 2007: "The District's dress code is established to teach grooming and hygiene, instill discipline, prevent disruption, avoid safety hazards, and teach respect for authority." As further described below, these stated goals do not justify NISD's disparate treatment of Plaintiff based on race.

36.    NISD's Dress Code and Hair Policy is based on impermissible racial stereotypes. NISD Dress Code and Hair Policy's forces non-white students to conform to racially discriminatory views that short hair exemplifies "excellence," "cleanliness,"

and "professionalism." It further reflects NISD's discriminatory perception of "high standards," by adopting a facially race-neutral hair policy that is motivated, at least in part, by the racially discriminatory goal of restricting Black students from wearing their natural hair or culturally significant hair formations.

37.     During a prior lawsuit involving NISD's hair policy, NISD, through Superintendent Rhodes, told the Houston Press, that "We've consistently been conservatively dressed, very conservatively disciplined. It's no secret what our policy is: You'll cut your hair to the right point. You'll tuck in your shirt. You'll have a belt. How can it be outdated? How many doctors, professionals, lawyers, look at your military branches, look at bankers, how many of them have long hair? " NISD implies that natural Black hair or culturally significant locs are unprofessional and linked to bad performance or low expectations. This assumption is based on racial stereotypes about natural Black hair, such as locs. NISD's Dress Code and Hair Policy, therefore, constitutes unlawful race discrimination.

C.     **NISD's Intentional Discrimination of Gray**

38.     Gray began attending school in NISD in 2009, as a first grader.

39.     Gray is currently a senior at a school in the NISD system and is eagerly awaiting graduation in May of 2022.

40.     Gray is an avid fisherman and serves as the sound engineer at the church where his grandfather serves as the pastor.

44.     Gray started growing his hair into locs as outward expression of his Black identity in 2019 while he was a sophomore at Needvile High School.

41.     During the 2021-2022 academic year, Gray's senior year, his locs had grown to a length that fell below his eyebrow.

42.     In December of 2021, NISD administrators began targeting Gray because of his hair length. Assistant Principal Kristin Wyatt approached Gray in the hall and instructed him that his hair was getting too long and that he would have to cut his hair.

43.     In January, shortly after the Christmas break, Assistance Principal Maresh, began waiting for Gray to enter the school each morning, to berate him about his hair length and to tell him that he had to cut his hair.

44.     These encounters with Assistant Principal Maresh continued in February and March monitoring the length and style of his hair and demanding that he cut his hair.

45.     Assistant Principal Maresh continued to single Gray out for being in violation of NISD's Dress Code and Hair Policy while his fellow white male students, with similarly long hair (for example, mullet hairstyles) were allowed to walk the halls of the school violating the same Dress Code and Hair Policy without fear of reprisal.

46.     Assistant Principal Maresh's confrontations of Gray crescendoed on March 3, 2022. Assistant Principal Maresh met Gray in the morning when he entered the school and told him that because he was in violation of the Dress Code and Hair Policy that he was being sent to ISS and would remain there until he cut his hair.

47.     Gray attempted to appease Assistant Principal Maresh and told him that he would put his locs in a ponytail, but that wasn't good enough for Assistant Principal Maresh because, among other things, male students were not allowed to have ponytails. He demanded that Gray cut his hair and sent him to ISS in the interim.

48.     That same day, NISD officials notified Gray's mother, Brahna Williams, via email that her son was being sent to ISS for his locs.

49.     Ms. Williams reached out to Principal Adamson to request an accommodation for Gray given that he was only 2 months away from graduation.

50.     Ms. Williams pleaded with Principal Adamson to "meet her halfway" and offered to pin her son's hair up to keep his hair above his eyebrows, but Principal Adamson told her that his hair also could not cover any part of his ears or touch his collar.

51.     In the end, Principal Adamson told Ms. Williams that he could not extend any accommodations to her son.

52.     Ms. Williams also reached out to Superintendent Rhodes to request an accommodation for her son's locs.

53.     Given Superintendent Rhodes vigilant defense of NISD's "conservative" dress code it came as no surprise that he was unwilling to offer any type of accommodation other than, "You'll cut your hair to the right point."

54.     NISD has continued isolating Gray from the student population in ISS every school day since March 3, 2022 for being in violation of its Dress Code and Hair Policy.

55.     In early April of 2022, Principal Adamson contacted Ms. Williams to advise her that Assistant Principal Maresh had notified him that Gray had exhausted the maximum number of days that he could be in ISS and that if Gray showed up to school on April 15, 2022[3] without having his hair cut, he would be sent DAEP for the remainder of the school year and not be allowed to attend the graduation ceremony.

56.     On April 19, 2022 both Principal Adamson and Assistant Principal Maresh met Gray as he entered the school. After they examined his hair and confirmed that he had not cut his hair, they sent him to ISS.

---

[3] NISD school was closed for the Easter holiday on April 15, 2022. Classes resumed on April 19, 2022.

57.     Principal Adamson then called Gray's mother, Ms. Williams, to ask her if Gray's hair was permanent and to inform her that following the standardized test that was scheduled for April 19, 2022, Gray would be suspended for the remainder of the day for not complying with the NISD Dress Code and Hair Policy.

58.     Principal Adamson further explained that when Gray returned to school on April 20th, he would be placed in DAEP for the remainder of the year.

59.     NISD students that have been placed in DAEP are prohibited from participating in in extracurricular events and other activities, including commencement.

60.     At ISS, Gray was confined to a room for the duration of the day, where he was expected to complete homework without instruction from his regular teachers.

61.     In addition, Gray was not allowed to interact with other students, talk, or leave the classroom without permission, and he had to eat lunch at his desk.

62.     Gray was denied access to qualified teachers, an interactive learning environment and also prohibited from participating in any of the extracurricular activities.

63.     As a result of being targeted, removed from the student population and threatened with not being allowed to participate in senior-year activities, including graduation ceremony, Gray's emotional health suffered, including stress and depression.

64.     NISD's hostile and wrongful actions individually and in the aggregate have made Gray feel unwelcome, ostracized and inferior.

65.     Gray has suffered, and will continue to suffer, humiliation and emotional distress as a direct result of NISD's unlawful targeting and isolation of Gray.

66.     NISD's hostile and wrongful actions individually and in the aggregate, proximately caused permanent injury to Gray including great distress, physical pain, mental anguish, fear, suffering and economic damages.

67.     NISD's wrongful acts have directly and/or proximately caused grievous, permanent injury to Gray, including great emotional distress, physical pain, mental anguish, fear, humiliation, embarrassment, degradation, injury to his reputation, suffering and economic damages.

68.     NISD engaged in these wrongful acts with malice or with reckless indifference to Gray's clearly established constitutional rights.

### V.  Count One—
### Violation of the Fourteen Amendment's Equal Protection Clause
### Pursuant to 42 U.S.C. §1983
### (Intentional Race Discrimination)

69.     Gray adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

70.     Gray brings this Fourteenth Amendment race discrimination claim against NISD for the discriminatory construction and selective enforcement of NISD's

Dress Code and Hair Policy against Gray. Plaintiff realleges and incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

71.     The Equal Protection Clause of the Fourteenth Amendment prohibits States from denying, "any person within its jurisdiction the equal protection of the laws." This direction requires all similarly situated persons to be treated alike. *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (quoting U.S. Const. amend. XIV, § 1).

72.     Prohibited racial discrimination includes reliance on racial prejudice or stereotypes. *See, e.g., Batson v. Kentucky*, 476 U.S. 79, 104 (1986).

73.     A school's use of race or ethnicity that is in any way motivated by prejudice or stereotype against a group constitutes intentional discrimination and violates the Equal Protection Clause of the Fourteenth Amendment.

74.     Additionally, treating similarly situated students differently because of "ethnic hair" constitutes discrimination in violation of the Equal Protection Clause. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 415 (5th Cir. 2015); *Hollins v. Atlantic Co.,* 188 F.3d 652, 661-62 (6th Cir. 1999).

75.     "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

76.     Pursuant to NISD's Board Policy Manual and Student Code of Conduct, Superintendent Rhodes and the NISD Board possess final authority to establish standards and policy with respect to student dress and grooming.

77.     NISD's Board, as the official policymaker for the school district, adopted a Dress Code and Hair Policy that targeted Gray and his natural hair growth, making it impossible for him to comply with the Dress Code and Hair Policy.

78.     NISD officials monitored Gray with discriminatory intent to force him to conform to racially discriminatory views that short hair exemplifies "excellence," "cleanliness," and "professionalism," and to reflect the District's discriminatory perception of "high standards."

79.     NISD adopted a facially race-neutral hair policy that is motivated, at least in part, by the racially discriminatory goal of restricting Black students from wearing their natural hair or culturally significant hair formations.

80.     NISD officials repeatedly targetted Gray and demanded that he cut his hair and threatened to punish him if Gray did not cut his hair. Other non-Black students were not similarly targeted for their hair.

81.     When Gray refused to cut his hair, NISD officials punished Gray by placing him in ISS and isolating him from the student population. Other non-Black students were not similarly targeted, surveilled, and punished for their hair.

82.     During a prior lawsuit involving NISD's Hair Policy, NISD, through Superintendent Rhodes, told the Houston Press, that "We've consistently been conservatively dressed, very conservatively disciplined. It's no secret what our policy is: You'll cut your hair to the right point. You'll tuck in your shirt. You'll have a belt. How can it be outdated? How many doctors, professionals, lawyers, look at your military branches, look at bankers, how many of them have long hair? " NISD implies that natural Black hair or culturally significant locs are unprofessional and linked to bad performance or low expectations. This assumption is based on racial stereotypes about natural Black hair, such as locs.

83.     In the same article, Superintendent Rhodes also suggested that "If you want to think we're backwards… no one is asking you to move to Needville and have these opinions invoked on you…Backwards isnt' all that bad when you become a parent." Gray's locs fall short of NISD "conservative and backwards views." NISD continues to hold those same beliefs as it relates to Gray and his natural Black hair. Those erroneous assumptions are based on racially discriminatory stereotypes that natural Black hair or any hair that doesn't conform to Eurocentric hair aesthetics have a negative impact on educational standards.

84.     By acting under color of state law to deprive Plaintiff of his Fourteenth Amendment rights, NISD officials have violated 42 U.S.C. § 1983.

85.     As a direct and proximate result of NISD's discriminatory construction and selective enforcement of its Dress Code and Hair Policy, Gray has suffered and will continue to suffer compensable harm, including violations of his Fourteenth Amendment rights, humiliation, and emotional distress, and is entitled to declaratory relief announcing that NISD's Dress Code and Hair Policy violates federal law, an order enjoining NISD from enforcing its hair policy, an order expunging any disciplinary sanctions that may be contained in Plaintiff's school records, damages, costs, and attorneys' fees.

## VI.  Count Two—
### Violation VI
### Pursuant to 42 U.S.C. §1983
### (Intentional Race Discrimination)

86.     Gray adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

87.     Gray brings this Title VI race discrimination claim against NISD for the discriminatory construction and selective enforcement of its hair policy against Gray.

88.     Title VI of the Civil Rights Act of 1964 provides that recipients of federal financial assistance may not discriminate based on race, color, or national origin. 42 U.S.C. § 2000d.

89.     NISD is a federally funded program or activity under 42 U.S.C. § 2000d. NISD receives $573 per student in federal funding each fiscal year.

90.     As a recipient of federal financial assistance, NISD and all its programs and activities are subject to Title VI of the Civil Rights Act of 1964.

91.     Like the Fourteenth Amendment's Equal Protection Clause, Title VI bars intentional discrimination. *See Alexander v. Choate*, 469 U.S. 287, 292-93 (1985); *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 607-08 (1983); *Hollins*, 188 F.3d at 661-62. A recipient's use of race or ethnicity that is in any way motivated by prejudice or stereotype against a particular group therefore violates both the Fourteenth Amendment and Title VI. 28 C.F.R. §42.104(b).

92.     Gray has been subjected to the discriminatory enforcement of NISD's hair policy based on his race and color.

93.     NISD officials repeatedly tarted Gray and demanded that Gray cut his hair and threatened to punish him if he did not cut his hair. Other non-Black students were not similarly targeted for their hair.

94.     When Gray refused to cut his hair, NISD officials punished Gray by placing him in ISS and isolating him from the student population. Other non-Black students were not similarly targeted, surveilled, and punished for their hair.

95.     NISD strictly enforces the Dress Code and Hair Policy against Gray without similarly enforcing the policy against white male students.

96.     NISH monitors and enforces the Dress Code and Hair Policy against Gray and does not similarly monitor and enforce such policy against white male students

97.     NISD's discriminatory construction and selective enforcement of its hair policy constitute a violation of Title VI.

98.     As a direct and proximate result of NISD's discriminatory construction and selective enforcement of its Dress Code and Hair Policy, Gray has suffered and will continue to suffer compensable harm, including humiliation, emotional distress, violations of his civil rights, and is entitled to declaratory relief announcing that NISD's hair policy violates federal law, an order enjoining NISD from enforcing its hair policy, an order enjoining NISD from discriminatorily enforcing its hair policies, an order expunging any disciplinary sanctions that may be contained in Plaintiff's school records, costs, and attorneys' fees.

### VII.  Count Three—
**Violation of the Fourteen Amendment's Equal Protection Clause
Pursuant to 42 U.S.C. §1983
(Sex Discrimination)**

99.     Gray adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

100.    Gray brings this Fourteenth Amendment sex discrimination claim against NISD for the discriminatory construction and enforcement of NISD's Dress Code and Hair Policy against Gray.

101.    The Constitution prohibits sex classifications based on "overbroad generalizations about the different talents, capacities, or preferences of males and females." *United States v. Virginia*, 518 U.S. 515, 533 (1996); *Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982) (invalidating school's policy that perpetuates a stereotyped view of proper roles of men and women).

102.    Any policy or rule that discriminates on the basis of gender must undergo, and pass muster under, an intermediate scrutiny analysis. *Craig v. Boren*, 429 U.S. 190, 197 (1976).

103.    NISD's Dress Code and Hair Policy on its face regulates male students' hair length but does not similarly regulate female students' hair length.

104.    Male students' violations can result in male students' exclusion from participation in a traditional academic setting and other educational extracurricular activities.

105.    NISD's Dress Code and Hair Policy concerning length is expressly limited to males; NISD does not have a similar restriction for female students.

106.    Applying a hair-length restriction only to male students constitutes illegal sex classification because such policy is impermissibly based on the stereotype that men must have short hair and only females have long hair.

107.    NISD's hair-length restriction does not further an important government interest because it has no legitimate, important, and substantial reason to permit female students to wear their hair long when male students are not so permitted.

108.    The policy is not reasonably related to traditional aims underlying similar regulations, such as teaching hygiene, preventing disruption, or avoiding safety hazards. Instead, NISD's restriction is wholly arbitrary.

109.    Further, NISD has attempted to force Gray to conform to sex based stereotypes (NISD's perception of an acceptable hair length for *male* students), as well as race-based stereotypes (NISD's perception of an acceptable hair formation for *Black* students).

110.    To bisect Gray's identities as Black and male, NISD has subjected him to an intersectional harm based on a combination of race and sex. Gray's identity as a Black male student creates a compounded burden not experienced by other students at NISD.

111.    The Dress Code and Hair Policy facially discriminates based on sex and, as applied, targets Black male students with culturally significant locs.

112.    Thus NISD subjects male and female students to different standards of dress and grooming based on outdated sex stereotypes, in violation of the Equal Protection Clause.

113.    As a direct and proximate result of NISD's discriminatory construction and enforcement of its Dress Code and Hair Policy, Gray has suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of his statutory rights, and are entitled to declaratory relief announcing that NISD's Dress Code and Hair Policy violates federal law, an order enjoining NISD from enforcing its Dress Code and Hair Policy, an order enjoining NISD from discriminatorily enforcing its Dress Code and Hair Policy, an order expunging any disciplinary sanctions that may be contained in Plaintiff's school records, damages, costs, and attorneys' fees.

### VIII.  Count Four— Violation of Title IX Pursuant to 42 U.S.C. §1983 (Sex Discrimination)

114.    Gray adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

115.    Gray brings this Title IX sex discrimination claim against NISD for the discriminatory construction and enforcement of its Dress Code and Hair Policy against Gray.

116.     Title IX states that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

117.     Like the Fourteenth Amendment's Equal Protection Clause, a plaintiff bringing a claim under Title IX may use either direct or circumstantial evidence of intentional discrimination. *Cf. Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994).

118.     NISD's Dress Code and Hair Policy on its face regulates male students' hair length but does not similarly regulate female students' hair length. Violations of the hair length requirement by male students can result in the students' exclusion from participation in a traditional academic setting and other educational extracurricular activities.

119.     NISD's Dress Code and Hair Policy concerning length is expressly limited to males; NISD does not have a similar restriction for female students.

120.     Applying a hair-length restriction only to male students constitutes illegal sex classification because such policy is impermissibly based on the stereotype that men must have short hair and only females have long hair.

121.    NISD's hair-length restriction is wholly arbitrary because it has no legitimate, important, and substantial reason to permit female students to wear their hair long when male students are not so permitted.

122.    Further, NISD has attempted to force Gray to conform to sex-based stereotypes (NISD's perception of an acceptable hair length for *male* students), as well as race based stereotypes (NISD's perception of an acceptable hair formation for *Black* students).

123.    The Dress Code and Hair Policy facially discriminates based on sex. And, as applied, targets Black male students with culturally significant locs.

124.    NISD subjects male and female students to different standards of dress and grooming based on outdated sex stereotypes, in violation of Title IX.

125.    As a direct and proximate result of NISD's discriminatory construction and enforcement of its Dress Code and Hair Policy, Gray has suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of his statutory rights, and are entitled to declaratory relief announcing that NISD's Dress Code and Hair Policy violates federal law, an order enjoining NISD from enforcing its Dress Code and Hair Policy, an order enjoining NISD from discriminatorily enforcing its Dress Code and Hair Policy, an order expunging any

disciplinary sanctions that may be contained in Plaintiff's school records, costs, and attorneys' fees.

### IX.  Count Five—
### Violation of the First Amendment
### Pursuant to 42 U.S.C § 1983
### (Freedom of Expression)

126.    Gray adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

127.    Gray brings this First Amendment free expression claim against NISD for its infringement on his First Amendment right to express themselves freely without repercussions from the government.

128.    The First Amendment prohibits the abridgment of speech. The general right to freedom of expression applies to conduct revealing an intent to convey a particularized message, and the likelihood that the message would be understood by those exposed to it. *Texas Johnson*, 491 U.S. 397, 404 (1989); *Canady v. Bossier Par. Sch. Bd*., 240 F.3d 437, 440 (5th Cir. 2001). Pursuant to the Fourteenth Amendment, the prohibition extends to rules imposed by state authorized actors, such as public school districts. *See* U.S. Const. amend. XIV.

129.    Gray wears his natural hair in locs as a sign of his heritage, identity, and ethnicity—a symbol widely understood as a Black hairstyle connected to Black identity and heritage.

130.    Gray's locs are representative of his Black culture and connection to his Black community.

131.    Gray wears his locs to the natural length to communicate his affinity with his cultural and family backgrounds.

132.    This communicative hairstyle does not impinge upon the rights of other students and do not interfere with any educational motive. Yet, NISD officials have repeatedly targeted Gray to ensure that the only way he could comply was by cutting off his locs altogether.

133.    The disciplinary actions that NISD has enforced, and continue to enforce, on Gray for expressing his culture, heritage, and background through hairstyle are unconstitutional infringements on his First Amendment right to free speech. Gray's right to freely express his heritage by wearing culturally significant locs in a non-distracting or offensive manner is clearly established.

134.    As a direct and proximate result of NISD's infringement on Gray's First Amendment right to express himself, Gray has suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of his constitutional rights, and is entitled to declaratory relief announcing that NISD's Dress and Hair Policy violates federal law, an order enjoining NISD from enforcing its Dress

and Hair Policy, an order expunging any disciplinary sanctions that may be contained in Plaintiff's school records, damages, costs, and attorneys' fees.

### X.  Count Six—
### Violation of the First Amendment
### Pursuant to 42 U.S.C § 1983
### (Freedom of Expression)

135.   Gray adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

136.   Plaintiff seeks a declaratory judgment in his favor pursuant to 28 U.S.C. § 2201, finding and determining that NISD's Dress and Hair Policy:

(1)   Discriminates based on race in violation of the Fourteenth Amendment right to equal protection;

(2)   Discriminates based on race in violation of Title VI;

(3)   Discriminates based on sex in violation of the Fourteenth Amendment right to equal protection;

(4)   Discriminates based on sex in violation of Title IX;

(5)   Violates the First Amendment right to free speech;

137.   Plaintiff further seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 finding and determining that Plaintiff's rights will be irreparably harmed without injunctive or declaratory relief from this Court.

## XI.   Attorney's Fees & Costs

138.   Gray adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

139.   Gray is authorized to recover attorney's fees and costs on his claims by statute and under principles of equity.  *See, e.g.*, 42 U.S.C. § 1988 (permitting recovery of attorney's fees for claims arising under 42 U.S.C. § 1983) and 29 U.S.C § 794a.

140.   Gray has retained the professional services of the undersigned attorneys.

141.   Gray has complied with the conditions precedent to recovering attorney's fees and costs.

142.   Gray is entitled to recover his attorney's fees and costs.

143.   Gray has incurred or may incur attorney's fees and costs in bringing this lawsuit.

144.   The attorney's fees and costs incurred or that may be incurred by Gray were or are reasonable and necessary.

## XII.   Conditions Precedent

145.   All conditions precedent have been performed or have occurred.

## XIII.   Jury Demand

146.   Gray demands a trial by jury on all issues triable to a jury.  *See*, Fed. R. Civ. P. 38.

## XIV.  Relief Sought

147.   Gray demands the following relief:

a.   Judgment against NISD finding and declaring that its actions violate Plaintiff's rights, as protected by the Fourteenth Amendment and First Amendment to the Constitution of the United States, and other applicable federal statutes;

b.   Order all appropriate injunctive relief as warranted, including but not limited to, ordering NISD to rescind its Dress and Hair Policy and put in place policies and procedures to ensure that such discriminatory conduct does not recur;

c.   Order all disciplinary sanctions stemming from NISD's Dress and Hair Policy expunged from Plaintiff's school records;

d.   Compensatory damages for severe mental anguish in the past and future and injury to his reputation resulting from the unlawful actions of NISD;

e.   An award of reasonable and necessary attorney's fees as specifically authorized by, among other things, 42 U.S.C. § 1988 and 29 U.S.C. § 794a;

f.   An award of reasonable and necessary costs and expenses;

g.   Prejudgment interest as provided by law;

h.   Postjudgment interest as provided by law; and

i.   Judgment for all the other relief to which Gray may be entitled.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street, Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739


By: _____
Melissa Moore
Tex. Bar No. 24013189
S.D. Tex. No. 25122
melissa@mooreandassociates.net
Curt Hesse
Tex. Bar. No. 24065414
S.D. Tex. No. 968465
curt@mooreandassociates.net
Rochelle Owens
Tex. Bar No. 240048704
S.D. Tex. No. 590507
rochelle@mooreandssociates.net

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of August in the year 2022, I filed this motion with the Court's CM/ECF system which will send notification of such filing to all counsel of record.

_____
Melissa Moore

Type text here