IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TREYVION GRAY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | C.A. NO.: 4:22-CV-01245 |
| | § | |
| NEEDVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**<u>NEEDVILLE INDEPENDENT SCHOOL DISTRICT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
PURSUANT TO RULE 12(B)(1) AND (B)(6)</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ iv

NATURE AND STAGE OF PROCEEDINGS ............................................................ 1

STATEMENT OF RELEVANT FACTS AS PLED BY PLAINTIFF ........................... 2

STATEMENT OF THE ISSUES ................................................................................. 3

SUMMARY OF THE ARGUMENT ........................................................................... 4

ARGUMENT & AUTHORITIES ................................................................................ 5

    A.    Standard of Review .......................................................................... 5

           1.    Rule 12(b)(1) ............................................................ 5

           2.    Rule 12(b)(6) ............................................................ 5

    B.    Gray's claims are subsumed under the IDEA and barred by his failure to comply with the IDEA's administrative exhaustion requirements .................... 6

           1.    The IDEA's mandatory exhaustion requirement .................... 6

           2.    Looking to the gravamen of Gray's complaint, it is apparent that he is seeking relief under the IDEA ........................................ 7

    C.    Gray's request for declaratory and injunctive relief should be denied ............ 10

    D.    Gray cannot state a viable Equal Protection claim for sex discrimination because the enforcement of a school district's policy requiring adherence to hair length regulations does not result in a constitutional deprivation ........ 11

    E.    Gray cannot state a viable Equal Protection claim for race discrimination against the District ................................................................ 15

           1.    Gray's allegations against the Board are conclusory and devoid of factual enhancement ........................................ 15

2.     Gray's attempt to impute the actions of District employees to the Board cannot support a claim for municipal liability ............................ 16

3.     Gray fails to plead sufficient facts that would support his claim that school officials use race as an invidious criterion for determining which students are disciplined for violating the District's hair length requirements ......................................... 17

F.     Gray cannot state a viable First Amendment claim because hair length does not objectively communicate any message that enjoys First Amendment protection ..................................................... 19

G.     Gray's statutory claims should be dismissed because he is not entitled to mental anguish damages under Title VI or Title IX ......................... 20

H.     Gray cannot state a viable Title VI claim against the District because the facts alleged do not support an inference of intentional race discrimination ................................................................... 20

1.     Gray's allegations of intentional discrimination amount to mere conclusory allegations............................................................ 20

2.     A.A. v. Needville Independent School District is of no help to Gray ........................................................................... 22

3.     Tellingly, the CROWN Act has not been adopted by the Texas Legislature, let alone the U.S. Congress................................ 23

I.     As a student does not have a protected right to wear their hair at the length and in the style of their choice, required adherence to a dress code that regulates hair length does not violate Title IX................................... 24

PRAYER ............................................................................................. 25

CERTIFICATE OF CONFERENCE AND COMPLIANCE ........................................... 26

CERTIFICATE OF SERVICE ........................................................................ 26

APPENDIX ....................................................................................Attached

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*A.A. v. Needville Indep. Sch. Dist.*,
  611 F.3d 248 (5th Cir. 2010) ......................................................................... 22

*Arnold v. Barbers Hill Indep. Sch. Dist.*,
  479 F. Supp. 3d 511 (S.D. Tex. Aug, 17, 2020) ............................................ 14

*Arnold v. U.S. Dep't of Interior*,
  213 F.3d 193 (5th Cir. 2000) ......................................................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ Passim

*Baker v. Putnal*,
  75 F.3d 190 (5th Cir. 1996) .............................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................... 5, 16, 21

*Canady v. Bossier Par. Sch. Bd.*,
  240 F.3d 437 (5th Cir. 2001) ......................................................................... 12

*Clayton ex rel. Hamilton v. Tate Cnty. Sch. Dist.*,
  560 F. App'x 293 (5th Cir. 2014) .............................................................. 17, 18

*Club Retro, L.L.C. v. Hilton*,
  568 F.3d 181 (5th Cir. 2009) ..................................................................... 17, 18

*Coleman v. Newburgh Enlarged City Sch. Dist.*,
  503 F.3d 198 (2d. Cir. 2007) ......................................................................... 7, 8

*Craig v. Boren*,
  420 U.S. 190 (1976) ....................................................................................... 13

*Cummings v. Premier Rehab Keller, PLLC*,
  142 S. Ct. 1562 (2022) ................................................................................... 20

*D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*,
  629 F.3d 450 (5th Cir. 2010) ........................................................................... 9

*D.A. v. Houston Indep. Sch. Dist.*,
    716 F. Supp. 2d 603 (S.D. Tex. 2009)................................................6, 10

*Den Norske Stats Oljeselskap As v. Heeremac VOF*,
    241 F.3d 420 (5th Cir. 2001) ...............................................................5

*Domico v. Rapides Parish School Board*,
    675 F.2d 100 (5th Cir. 1982) .......................................................13, 14

*Endrew F. v. Douglas Cnty. Sch. Dist.*,
    137 S. Ct. 988 (2017) ...........................................................................9

*Epperson v. Bd. of Trustees*,
    386 F. Supp. 317 (S.D. Tex. 1974)....................................................12

*Eugene v. Alief Indep. Sch. Dist.*,
    65 F.3d 1299 (5th Cir. 1995) .............................................................17

*Ferrell v. Dallas Indep. Sch. Dist.*,
    392 F.2d 697 (5th Cir. 1968) .......................................................14, 19

*Fry v. Napoleon Cmty. Schools*,
    137 S. Ct. 743 (2017) ...............................................................6, 8, 10

*Frye v. Anadarko Petro. Corp.*,
    953 F.3d 285 (5th Cir. 2019) .............................................................11

*Gonzalez v. Kay*,
    577 F.3d 600 (5th Cir. 2009) ...............................................................5

*Gonzalez v. Ysleta Indep. Sch. Dist.*,
    996 F.2d 745 (5th Cir. 1993) .............................................................12

*Hartford Ins. Group v. Lou-Con, Inc.*,
    293 F.3d 908 (5th Cir. 2002) ...............................................................5

*Hazelwood Sch. Dist. v. Kuhlmeier*,
    484 U.S. 260 (1988) .........................................................................12

*Jett v. Dallas Indep. Sch. Dist.*,
    7 F.3d 1241 (5th Cir. 1993) ...............................................................17

*Johnson v. Moore*,
    958 F.2d 92 (5th Cir. 1992) ..................................................................... 16, 17

*Johnson v. Rodriguez*,
    110 F.3d 299 (5th Cir. 1997) ....................................................................... 18

*Karr v. Schmidt*,
    460 F.2d 609 (5th Cir. 1972) ................................................................ Passim

*Lane v. Halliburton*,
    529 F.3d 548 (5th Cir. 2008) ......................................................................... 9

*Marc V. v. N.E. Indep. Sch. Dist.*,
    455 F. Supp. 2d 577 (W.D. Tex. 2006) ....................................................... 6, 7

*McMillen v. New Caney Indep. Sch. Dist.*,
    939 F.3d 640 (5th Cir. 2019) ................................................................ Passim

*Mercado v. Lynch*,
    823 F.3d 276 (5th Cir. 2016) ....................................................................... 14

*Monell v. Department of Social Services of the City of New York*,
    436 U.S. 658 (1978) ............................................................................ 11, 16, 17

*Pedrozo v. Clinton*,
    610 F. Supp. 2d 730 (S.D. Tex. 2009) ........................................................... 5

*Perez v. Sturgis Pub.*,
    3 F.4th 236 (6th Cir. 2021), cert. granted, ---S. Ct.---,
    2022 WL 4651225 (U.S. Oct. 3, 2022) ......................................................... 7

*Piotrowski v. City of Houston*,
    237 F.3d 567 (5th Cir. 2001) ....................................................................... 16

*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*,
    288 F.3d 478 (2d Cir. 2002) .......................................................................... 8

*Reyes v. Manor Indep. Sch. Dist.*,
    850 F.3d 251 (5th Cir. 2017) .................................................................... 8, 10

*Rivera v. Houston Indep. Sch. Dist.*,
    349 F.3d 244 (5th Cir. 2003) ............................................................ 12, 16, 17

*Roque v. Jazz Casino Co. LLC*,
   388 F. App'x 402 (5th Cir. 2010) ....................................................................... 6

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
   393 U.S. 503 (1969) ............................................................................... 15, 19

*Woodley, et al. v. Tatum Unified School District, et al.*,
   2:21-CV-00364-RWS (S.D. Tex. Sept. 30, 2022) ........................................ Passim

## STATE CASES

*Barber v. Colorado Indep. Sch. Dist.*,
   901 S.W.2d 447 (Tex. 1995) ...................................................................... 14, 15

*Bastrop Indep. Sch. Dist. v. Toungate*,
   958 S.W.2d 365 (Tex. 1997) ..................................................................... 14, 15

## FEDERAL STATUTES AND RULES

20 U.S.C. § 1415(i)(2)(A) ...................................................................................... 7

20 U.S.C. § 1415(l) ................................................................................................. 6

42 U.S.C. § 1983 ............................................................................................... 7, 11

42 U.S.C. § 2000d ................................................................................................. 21

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 10

## STATE REGULATIONS

19 Tex. Admin. Code §§ 89.1150 – 89.1197 .......................................................... 7

## NATURE AND STAGE OF THE PROCEEDINGS

Treyvion Gray filed suit against Needville Independent School District (the District), as well as its Board, superintendent, and several administrators, alleging violations of his rights under Section 1983, Title VI, Title IX, and state law. *See generally* Dkt. No. 1. Additionally, Gray filed a motion for a temporary restraining order (TRO) and preliminary injunction. Dkt. Nos. 15-16. Defendants filed their expedited response to the TRO and motion to dismiss pursuant to Rules 12(b)(1) and (6). Dkt. No. 21. The Court held an evidentiary hearing, on May 4, 2022. Dkt. No. 27. After finding it had subject matter jurisdiction, the Court denied Defendants' Rule 12(b)(1) motion and heard evidence on Gray's TRO. *Id*. That same day, the Court entered an Order granting Gray's motion for a TRO and setting the matter for a permanent injunction (PI) hearing on May 18, 2022. *Id*. On May 10, 2022, the Parties filed a joint letter informing the Court they agreed to extend the TRO through the date of the District's graduation ceremony in order to allow Gray to participate in the graduation ceremony and obviate the need for a PI hearing. Dkt. No. 34. As such, the Court cancelled the PI hearing and extended the TRO through June 1, 2022. Dkt. No. 35.

On May 24, 2022, Gray filed an unopposed motion for extension of time to file a response to the motion to dismiss, which the Court granted. Dkt. Nos. 36-37. On June 7, 2022, Gray filed a joint stipulation of dismissal with prejudice to dismiss all claims against the Board and all individual defendants, but not his claims against the District, which the Court granted. Dkt. Nos. 39-40. The Parties conferred, on or about August 11, 2022, and

agreed on an additional briefing schedule for Gray to respond to the remaining arguments in the motion to dismiss on behalf of the District. Dkt. No. 43. In lieu of responding to the motion to dismiss, Gray filed an amended complaint, on August 26, 2022, after conferring with the District. Dkt. No. 45. In his amended complaint, Gray dropped his state law claims and request for punitive damages against the District, in addition to removing any claims against the previously dismissed defendants. *Id.* However, he continues to assert his Section 1983, Title VI, Title IX, and declaratory and injunctive relief claims against the District. *Id.* The District filed a premotion letter with the Court, pursuant to the Court's procedures, and now files this motion to dismiss Gray's amended complaint under Rule 12(b)(1) and (6). *See* Dkt. Nos. 46, 48.

## STATEMENT OF RELEVANT FACTS AS PLED BY PLAINTIFF

- The District's grooming and hair length policy prohibits all male students' hair from covering any part of their ears, extending beyond the eyebrows, or extending over the top of a standard collar in the back when combed down. *See* Dkt. No. 45 at 27. <u>The District's grooming and hair length policy does not prohibit students from wearing their hair in locs.</u> *Id.*

- Gray began attending school within the District in First Grade, in 2009. *Id.* at 38. When he was a Sophomore in high school, Gray made the decision to start growing his hair into locs as an "outward expression of his Black identity in 2019." *Id.* at 44.[1]

- Gray was not disciplined for wearing his hair in locs between his Sophomore year and December of his Senior year. *Id.* at 42.

- After Gray's locs "had grown to a length that fell below his eyebrow" during his Senior year, multiple assistant principals spoke with Gray, from December of 2021 through March of 2022, about his hair being out of dress code. *Id.* at 41-46.

---

[1] Gray misnumbers his factual allegations between paragraphs 40 and 45 on page 13 of his Complaint.

- On March 3, 2022, after months of receiving warnings that he was out of dress code due to the length of his hair, Gray was sent to ISS for violating the student code of conduct. *Id*. at 46. At this time, Gray "attempted to appease" the assistant principal by stating he would pull his hair into a ponytail, which would still be in violation of the dress and grooming policy, as male students were not allowed to have ponytails. *Id*. at 47. Gray's mother requested the school make an accommodation for Gray, but for the sole reason that "he was only 2 months away from graduation." *Id*. at 49-53. As such, the District denied the accommodation request. *Id*. at 51, 53.

- Gray refused to cut his hair to abide by the District' hair length requirements. *See generally id.* As such, he was sent to ISS each day he was out of dress code. *Id*. at 54-55. After exhausting the maximum number of days he could be in ISS, Gray was informed he would be sent to DAEP for the remainder of the school year, if he continued to choose not to comply with the District's hair length requirements. *Id*. at 55-58. Gray refused to comply with the District's hair length requirements and was, therefore, placed in DAEP for the remainder of the school year. *Id*. at 58.[2]

## STATEMENT OF THE ISSUES

1. This Court lacks jurisdiction over all of Gray's claims because he failed to exhaust his administrative remedies in accordance with the Individuals with Disabilities Education Act (IDEA). [3]

2. Gray's injunctive relief claim should be dismissed as moot, since he has since graduated.

3. Gray fails to state a viable underlying claim for a violation of Section 1983, Title IX, Title VI, or state law that could support a claim for declaratory relief.

4. Gray's Section 1983 Equal Protection Clause sex discrimination claim should be dismissed because long-standing, controlling, en banc Fifth Circuit authority holds that a student does not have a constitutionally protected right to wear their hair at the length and in the style of their choice.

---

[2] Although Gray pleads he is still a Senior at the District and subject to the hair length policy, Gray graduated in May of 2022. *Compare* Dkt. No. 45 at 39, 54 *with* Dkt. No. 34.

[3] Although the Court previously denied the District's Rule 12(b)(1) motion to dismiss at the beginning of the TRO hearing (Dkt. No. 29), in order to preserve any error on appeal, the District reasserts its position that this Court lacks jurisdiction over all of Gray's claims because he failed to exhaust his administrative remedies in accordance with the IDEA.

5. Gray's Section 1983 Equal Protection Clause race discrimination claim should be dismissed because his allegations are merely conclusory and devoid of factual enhancement.

6. Gray's Section 1983 First Amendment claim should be dismissed because Fifth Circuit authority holds that hair length does not objectively communicate any message that enjoys First Amendment protection.

7. Gray's statutory claims should be dismissed because he is barred by law from recovering mental anguish damages under Title IX or Title VI.

8. Gray's Title VI claim should be dismissed because his factual allegations do not support an inference of intentional race discrimination.

9. Gray's Title IX claim should be dismissed because Fifth Circuit authority holds that a student does not have a protected right to wear their hair at the length and in the style of their choice.

## **SUMMARY OF THE ARGUMENT**

The Court lacks jurisdiction over all of Gray's claims because he failed to exhaust his administrative remedies in accordance with the IDEA. Additionally, Gray's claim for injunctive relief is now moot and, under recent Supreme Court authority, he is barred from recovering mental anguish damages under Title VI and Title IX. Further, under long-standing, binding precedent, a student does not have a protected right under federal or state law to wear their hair at the length and in the style of their choice while attending school. Fifth Circuit authority additionally makes clear that hair length does not objectively communicate any message that enjoys First Amendment protection. What is more, Gray's pleadings do not support an inference of intentional race discrimination. As such, all of Gray's claims against the District should be dismissed.

## ARGUMENT & AUTHORITIES

### A.   *Standard of Review.*

#### 1.  *Rule 12(b)(1).*

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the Court's exercise of subject matter jurisdiction over a case. *See Den Norske Stats Oljeselskap As v. Heeremac VOF*, 241 F.3d 420, 424 (5th Cir. 2001). "In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* A court must accept all factual allegations in the plaintiff's complaint as true, and the burden of establishing a federal court's subject matter jurisdiction rests with "the party seeking to invoke it." *See Pedrozo v. Clinton*, 610 F. Supp. 2d 730, 733 (S.D. Tex. 2009) (citing to *Hartford Ins. Group v. Lou-Con, Inc.*, 293 F.3d 908, 910 (5th Cir. 2002)).

#### 2.  *Rule 12(b)(6).*

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level…." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted).

The Supreme Court in *Iqbal* explained that *Twombly* illustrates the applicable "two-pronged approach" for determining whether a complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 679. A court must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Legal conclusions "must be supported by factual allegations." *Id*. Upon identifying the well-pleaded factual allegations, the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Additionally, a motion to dismiss should be granted when a claim fails as a matter of law. *See Roque v. Jazz Casino Co. LLC*, 388 F. App'x 402, 404 (5th Cir. 2010) ("Roque's [Section] 1983 claim fails as a matter of law because Jazz Casino and Newell are not state actors.").

**B.**   **Gray's claims are subsumed under the IDEA and barred by his failure to comply with the IDEA's administrative exhaustion requirements.**

    *1.*   *The IDEA's mandatory exhaustion requirement.*

Under the IDEA, a claim that a student has been denied a free and appropriate public education (FAPE) must first be administratively exhausted. *Fry v. Napoleon Cmty. Schools*, 137 S. Ct. 743, 753 (2017) (explaining that the statutory text of the IDEA "compels exhaustion when a plaintiff seeks 'relief' that is 'available' under the IDEA."); 20 U.S.C. § 1415(l). In fact, a claim under the IDEA is not justiciable until exhaustion is complete or the plaintiff establishes that exhaustion was excused. *D.A. v. Houston Indep. Sch. Dist.*, 716 F. Supp. 2d 603, 613 (S.D. Tex. 2009) (Ellison, J.); *Marc V. v. N.E. Indep.*

*Sch. Dist.*, 455 F. Supp. 2d 577, 592 (W.D. Tex. 2006) (Rodriguez, J.).

Specifically, in Texas, a parent (or adult student) must request a due process hearing and, upon request, the State of Texas appoints an administrative hearing officer. 19 Tex. Admin. Code §§ 89.1150 – 89.1197. The hearing officer conducts an administrative hearing and renders a written decision. *See generally id*. Only after the hearing officer has rendered a decision may an IDEA claim be brought in federal court. *Marc V.*, 455 F. Supp. 2d at 592; 20 U.S.C. § 1415(i)(2)(A) (providing that an aggrieved party may appeal an adverse hearing officer's decision). But any federal litigation is limited to an appeal of the hearing officer's decision based on the underlying administrative record and any additional evidence received by the court. *Marc V.*, 455 F. Supp. 2d at 592.

2.  *Looking to the gravamen of Gray's complaint, it is apparent that he is seeking relief under the IDEA.*

A suit that seeks relief available under the IDEA requires a plaintiff to exhaust his administrative remedies prior to bringing suit, regardless of whether the plaintiff brings alternative federal claims. *McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 644 (5th Cir. 2019); *Marc V.*, 455 F. Supp. 2d at 592 ("A litigant may not escape this requirement of administrative exhaustion by pleading a related cause of action under a different federal statute, e.g., 42 U.S.C. § 1983."); *see also Perez v. Sturgis Pub. Schs.*, 3 F.4th 236 (6th Cir. 2021), *cert. granted*, ---S. Ct.---, 2022 WL 4651225 (U.S. Oct. 3, 2022) (No.21-887). If the plaintiff fails to exhaust his administrative remedies under the IDEA, "his suit asserting other federal claims must be dismissed if it seeks relief that is also available under the IDEA." *Id.* (citations and alterations omitted); *see also Coleman v.*

7

*Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 203 (2d. Cir. 2007) ("We have routinely stated that the IDEA's exhaustion requirement is jurisdictional," citing *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002)).

In determining whether a plaintiff is required to exhaust his administrative remedies through the IDEA, courts focus on the substance of the complaint, rather than the "labels and terms" the plaintiff uses. *Id.* at 645. The Supreme Court has explained that a court's inquiry should be guided by asking two questions: "First, could the plaintiff have brought the same claim if the alleged conduct had occurred at a public facility that was not a school? Second, could a non-student at the school have brought the same claim?" *See Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 256-57 (5th Cir. 2017) (citing *Fry*, 137 S. Ct. at 743). If the answers to both questions are no, the plaintiff's claims overlap with any IDEA claims and must be administratively exhausted. *Id.* at 257. In this case, the answer to both of these questions is "no."

A review of the declarations submitted by both Gray and his mother, Brahna Williams, in the request for a TRO reveal that Gray's complaint is centered around the District's failure to provide the accommodations outlined in his Individualized Education Program (IEP) – specifically that he was denied services provided for in his IEP while placed in DAEP and ISS for violating the District's dress and grooming code. *See* Dkt. No. 15 at 43-47, Exh. 1 at 22-26, 37 ("During the time that I was in ISS, the school did not follow my IEP to make sure that I received help with my educational needs."), and Exh. 2 at 27-30, 40 ("While in ISS, [Gray] did not receive the same education opportunities that he did while he was in regular in-class instruction, including the assistance required by his

8

IEP."). What is more, Gray and his mother testified during the TRO hearing that his claims against the District are brought, at least in part, because of the denial of accommodations owed to him under his IEP. *See* Dkt. No. 33, Tr. 9:15-20, 88:10-89:18 (District's counsel asked, "In fact, one of the things you're complaining about in this lawsuit is the school district's failure to follow your IEP, right?" Gray answered, "Yes, sir.").[4] For purposes of the Court's resolution of jurisdictional facts it is, therefore, undisputed that Gray seeks relief available under the IDEA.

Only disabled students are entitled to IEPs and the protections afforded by the IDEA. *See D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453-54 (5th Cir. 2010). In fact, the Supreme Court has observed that "[t]he IEP is 'the centerpiece of the statute's education delivery system for disabled children.'" *Endrew F. v. Douglas Cnty. Sch. Dist.*, 137 S. Ct. 988, 994 (2017); *Fry*, 137 S. Ct. at 749 ("[A]n IEP…serves as the 'primary vehicle' for providing each child with the promised FAPE."). Accordingly, Gray's own evidence and testimony conclusively establishes that he is a special education student complaining of an alleged failure of the District to provide him with a FAPE. *See* Dkt. No. 15 at 43-47, Exh. 1 at 22-26, 37.

Gray's complaints undeniably seek relief available under the IDEA. *See McMillen*, 939 F.3d at 645 (concluding that a plaintiff's lawsuit challenging a district's failure to provide him with the FAPE that the IDEA promised him invoked the IDEA's exhaustion

---

[4] The Court is permitted to look at evidence in the record to decide a Rule 12(b)(1) motion to dismiss. *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) ("[U]nder Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." (internal citations and quotations omitted)).

requirements, even if the claim was not pled under the IDEA); *Fry*, 137 S. Ct. at 755 (explaining that a plaintiff would be seeking relief available under the IDEA if he were "contesting the adequacy of a special education program[]," even if the claim was not pled under the IDEA and did not use IDEA specific language). Further, applying *Endrew F.*, *Fry*, and *Reyes*, it follows that only a student, at a school, could bring Gray's claims challenging the denial of services provided for him in his educational programming. *See* Dkt. Nos. 15, 45. As such, Grays' claims overlap with the IDEA, and are subject to the IDEA's exhaustion requirement. *Reyes*, 850 F.3d at 256-57.

Yet, it is apparent from the face of Gray's complaint that he is not appealing the decision of an administrative hearing. *See generally* Dkt No. 45. Instead, he is attempting to adjudicate alleged IDEA violations in this Court, in the first instance, after electing to bypass the administrative hearing process. *See id*. The law precludes him from doing so. *Fry*, 137 S. Ct. at 753; *Reyes*, 850 F.3d at 256-57. Because Gray has demonstrated the gravamen of his complaint is an IDEA claim, and it is undisputed that Gray did not exhaust his IDEA claims, his claims are not justiciable and must be dismissed. *Fry*, 137 S. Ct. at 753; *Reyes*, 850 F.3d at 256-57; *see also D.A.*, 716 F. Supp. 2d at 613; Fed. R. Civ. P. 12(b)(1). After exhausting his claims, Gray may, if he is dissatisfied with the result, bring federal claims. But federal statutory law and Supreme Court precedent bars him from doing so now.

## C.   *Gray's request for declaratory and injunctive relief should be denied.*

When considering a declaratory judgment action, a district court must decide: "(1) whether an actual controversy exists between the parties in the case; (2) whether it has

authority to grant declaratory relief; and (3) whether to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Frye v. Anadarko Petro. Corp.*, 953 F.3d 285, 294 (5th Cir. 2019). Gray has since graduated and is no longer subject to the District's dress and grooming policies. *Compare* Dkt. No. 45 at 39, 54 *with* Dkt. No. 34. As such his claim for injunctive relief is moot and should be dismissed by the Court.

Further, as shown below, as a matter of law, Gray's claims for race and gender discrimination do not establish an "actual controversy." *See* Parts D-I *infra*; *Frye*, 953 F.3d at 294. As such, the Court lacks the authority to, and should exercise its broad discretion and refuse to, enter declaratory judgment.

**D.    *Gray cannot state a viable Equal Protection claim for sex discrimination because the enforcement of a school district's policy requiring adherence to hair length regulations does not result in a constitutional deprivation.***

The Supreme Court held in *Monell v. Department of Social Services of the City of New York* that local governments can only be held liable for constitutional wrongs inflicted on their citizens pursuant to official policy. 436 U.S. 658, 694 (1978) (holding "that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *see also Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 752-53 (5th Cir. 1993). Under *Monell* and its progeny, municipal liability under Section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy or custom; and (3) a violation of

11

constitutional rights whose "moving force" is the policy or custom. *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).

Gray's gender-based claim that the District's hair length policy is unconstitutional on its face and violates his rights under the Fourteenth Amendment's Equal Protection Clause is foreclosed by binding authority from the en banc Fifth Circuit. *See* Dkt. No. 45 at 99-113. The Fifth Circuit has expressly held that a school district's hair length regulation is *per se* constitutional because there is not a constitutionally protected right "to wear one's hair in a public high school in the length and style that suits the wearer." *See Karr v. Schmidt*, 460 F.2d 609, 613, 617-18 (5th Cir. 1972) (en banc) ("Given the very minimal standard of judicial review to which [hair] regulations are properly subject in the federal forum, we think it proper to announce a *per se* rule that such regulations are constitutionally valid."); *see also Epperson v. Bd. of Trustees*, 386 F. Supp. 317, 318-19 (S.D. Tex. 1974) (applying *Karr*'s *per se* rule to elementary schools).

Specifically, in *Karr*, the Fifth Circuit stated it was "compelled to recognize and give weight to the very strong policy considerations in favor of giving local school boards the widest possible latitude in the management of school affairs." *Karr*, 460 F.2d at 615; *see also Canady v. Bossier Par. Sch. Bd*., 240 F.3d 437, 441 (5th Cir. 2001) (citing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988) for the proposition that "[s]chool boards, not federal courts, have the authority to decide what constitutes appropriate behavior and dress in public schools."). The Fifth Circuit went so far as to direct all district courts "to grant an immediate motion to dismiss for failure to state a claim for which relief can be granted" in cases – like this one – where the "complaint merely

alleges the constitutional invalidity of a high school hair and grooming regulation." *Karr*, 460 F.2d at 618.

The Fifth Circuit, in 1982 – 6 years after the Supreme Court's decision in *Craig v. Boren*, 420 U.S. 190, 197 (1976), which Gray mistakenly contended in his application for a TRO functionally abrogated *Karr* (Dkt. No. 15 at 59, n.6) – continued to apply *Karr* in *Domico v. Rapides Parish School Board*, 675 F.2d 100 (5th Cir. 1982), to specifically distinguish between the ability of primary and secondary school systems to enforce grooming policies, as compared to public colleges and universities. In that case, the Fifth Circuit upheld a k-12 school district's grooming policies as applied to educators, concluding that it would not intervene in the district's "quite rational determination to limit its employees' choice of hairstyle," which it determined was a "reasonable means of furthering the school board's undeniable interest in teaching hygiene, instilling discipline, asserting authority, and compelling uniformity." *Domico,* 675 F.2d at 102 (internal quotations in original). Looking to *Karr*'s continued vitality, the Fifth Circuit explained the "bright line" distinction it established between justifications for hairstyle regulations at the college level and at the level of elementary and secondary schools:

> . . . [T]his Circuit has established a bright line applicable to hairstyle regulation cases: at the public college level, hairstyle regulations cannot, absent exceptional circumstances, be justified by the school's asserted educational and disciplinary needs, while in the public elementary and secondary schools, such regulations are always justified by the school's needs. The place where the line of permissible hairstyle regulation is drawn is between the high school door and the college gate.

*Id.* (omission and alteration added, internal citations omitted) (emphasis added). It is clear that the Fifth Circuit's directive to dismiss cases such as this one is the controlling law in this Circuit.[5]

The Texas Supreme Court also rejects the argument that hair length regulations that apply only to male students violate fundamental constitutional rights. *Bastrop Indep. Sch. Dist. v. Toungate*, 958 S.W.2d 365 (Tex. 1997); *Barber v. Colorado Indep. Sch. Dist.*, 901 S.W.2d 447, 450 (Tex. 1995). In *Barber*, the Texas Supreme Court, relying on Fifth Circuit precedent, rejected a student's argument that a hair length regulation violated his fundamental constitutional rights because it did not apply to female students. *Barber*, 901 S.W.2d at 448, 450 (citing *Karr*, 460 F.2d at 611; *Ferrell v. Dallas Indep. Sch. Dist.*, 392 F.2d 697, 702-04 (5th Cir. 1968) (finding that a school district's high school grooming code did not violate the state or federal constitution)). The Texas Supreme Court "agree[d] with the Fifth Circuit's sensible approach when reviewing grooming codes in high schools" in that "it would be difficult to prove by reason, logic, or common sense that the federal judiciary is more competent to deal with hair length than are the local school authorities..." *Id.* (quoting *Karr*, 460 F.2d at 611). In *Toungate*, the Texas Supreme Court explained that the Supreme Court of the United States has strongly hinted "that hair-length regulations do

---

[5] Although this Court has previously entered a contrary interlocutory finding in this case and at the preliminary injunction stage in *Arnold v. Barbers Hill Independent School District*, this Court can, and should, reconsider its rulings. *See* Dkt. No. 27; *Arnold v. Barbers Hill Indep. Sch. Dist.,* 479 F. Supp. 3d 511, 589 (S.D. Tex. Aug, 17, 2020) (concluding for preliminary injunction, Karr did not bar plaintiffs' gender claims). That is because this Court is bound by *Karr*. And this is true of any panel of the Fifth Circuit that may hear this case. The Fifth Circuit's rule of orderliness honors *stare decisis* by compelling one panel to follow the decisions of a prior panel. *See, e.g., Arnold v. U.S. Dep't of Interior*, 213 F.3d 193, 196 n.4 (5th Cir. 2000) ("Under the rule of orderliness, to the extent that a more recent case contradicts an older case, the newer language has no effect."). And a subsequent panel simply cannot ignore the precedent of the en banc Fifth Circuit. *See id.*; *see also Mercado v. Lynch*, 823 F.3d 276, 278-79 (5th Cir. 2016).

not jeopardize constitutional rights." *Toungate*, 958 S.W.2d at 372-73 (citing *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507 (1969), noting that the Supreme Court "contrasted the peaceable, nondisruptive display of black armbands, which it characterized as closely akin to pure speech with the regulation of the length of skirts or the type of clothing, hair style, or deportment" (internal citations and insertions omitted)).

Decades of binding precedent establishes that the District has the exclusive ability to regulate male and female students' hair length – even if different regulations are imposed on one sex. As a result, Gray's gender-based facial challenge to the District's hair length policy under the Equal Protection Clause simply is not cognizable and this Court must dismiss it. *But see Woodley, et al. v. Tatum Unified School District, et al.*, 2:21-CV-00364-RWS (S.D. Tex. Sept. 30, 2022) (granting in part and denying in part Defendants' motion to dismiss).[6]

**E.    *Gray cannot state a viable Equal Protection claim for race discrimination against the District.***

   **1.    *Gray's allegations against the Board are conclusory and devoid of factual enhancement.***

Gray's allegation that the District's adoption of the hair length policy was "motivated, at least in part, by the racially discriminatory goal of restricting Black students from wearing their natural hair or culturally significant hair formations," is wholly conclusory and a naked assertion devoid of factual enhancement. *See* Dkt. No. 45 at 36. At best, Gray makes the blanket assertion that the District monitored and enforced the dress

---

[6] A copy of this Pleading and Order can be found at Tab A of the Appendix attached hereto.

code and hair policy against him and did not similarly monitor and enforce such policy against white male students. *Id.* at 45, 95-96. As the Supreme Court held in *Iqbal*, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and that a complaint will not suffice if "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). And this is all that Gray offers. Thus, none of Gray's conclusory allegations against the District are entitled to the assumption of truth and his Section 1983 race discrimination claim against the District is legally insufficient and should be dismissed. *Iqbal*, 556 U.S. at 678.

> 2.   *Gray's attempt to impute the actions of District employees to the Board cannot support a claim for municipal liability.*

The Fifth Circuit in *Piotrowski v. City of Houston* stated that "the unconstitutional conduct must be directly attributable to the [entity] through some sort of official action or imprimatur; isolated unconstitutional actions by employees will almost never trigger liability." 237 F.3d 567, 578 (5th Cir. 2001) (internal citations omitted and insertion added). Moreover, a school district cannot be held liable under Section 1983 for an employee's alleged misconduct based on the theories of *respondeat superior* or vicarious liability. *See Monell*, 436 U.S. at 690-94; *Johnson v. Moore*, 958 F.2d 92, 93 (5th Cir. 1992). Under Texas law, final policy-making authority in a public school district, such as the District, rests exclusively with the district's board of trustees. *See Rivera*, 349 F.3d at 247; *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) (stating the final policy-maker for school districts is the board of trustees). Simply because an employee acts

as a decision-maker does not mean that employee is a policymaker for the district. *See Jett*, 7 F.3d at 1246; *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995).

In Gray's complaint, the only allegations attributable to the Board are that its members adopted a *per se* constitutional dress code and hair length policy, as well as the allowable disciplinary measures for violations of the Student Code of Conduct. *See* Dkt. No. 45 at 26-36, 77, 79. All other allegations concerning actual enforcement of the dress and grooming code are made against District employees. *Id.* at 38-68. However, any attempt by Gray to impute the actions of District employees (*i.e.*, enforcement of the *per se* constitutional hair policy in a racially discriminatory manner) to the Board fails, because these allegations amount to an impermissible attempt to impose vicarious liability on the District and cannot support municipal liability under Section 1983. *See Monell*, 436 U.S. at 690-94; *Johnson*, 958 F.2d at 93; *Woodley,* 2:21-CV-00364-RWS at pp. 9-10, attached in Appendix, Tab A ("[L]iability cannot be imputed to Tatum ISD if its employees enforced the hair and grooming policy in a discriminatory manner.").

> 3. *Gray fails to plead sufficient facts that would support his claim that school officials use race as an invidious criterion for determining which students are disciplined for violating the District's hair length requirements.*

To maintain an equal protection claim, Gray must allege that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Clayton ex rel. Hamilton v. Tate Cnty. Sch. Dist.*, 560 F. App'x 293, 297 (5th Cir. 2014) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009)) (internal quotations omitted). However, Gray must plead, and ultimately prove, more than mere disparate impact. *Id.* at 297. Rather, "a party who wishes

17

to make out an Equal Protection claim must prove the existence of purposeful discrimination motivating the state action which caused the complained-of injury." *Id*. at 298 (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)) (internal quotations omitted). Yet, Gray does not.

Gray's only pleading that supports his contention that the Board's adoption of its *facially race-neutral* hair length policy was for discriminatory purposes is his assertion that the goal of the hair length policy was to "restrict[] Black students from wearing their natural hair or culturally significant hair formations." *See* Dkt. No. 45 at 79. However, Gray affirmatively pleads that he was allowed to wear his hair in locs for almost two years without issue. *Id*. at 38-41. By Gray's own admission, it was not until his hair "had grown to a length that fell below his eyebrow," and, thus, out of dress code, that administrators started approaching him and providing warnings that his hair was in violation of the length requirements. *Id*. at 44, 41. Thus, Gray negates his race discrimination claim, because he affirmatively pleads he was allowed to wear his hair in locs until he was in violation of the facially neutral hair length requirements set by the Board for all male students, regardless of their race.

Gray's assertion that the District's *facially race-neutral* hair policy "forces non-white students to conform to racially discriminatory views that short hair exemplifies 'excellence,' 'cleanliness,' and 'professionalism," fares no better. *Id*. at 36. Gray does not offer any further allegations that would support his contention that requiring short hair on males equates to racial discrimination. *See generally id*. Nor could he, as it would be factually incorrect to state all Black males wear their hair in the same manner, style, or at

18

the same length. *See Woodley,* 2:21-CV-00364-RWS, attached in Appendix, Tab A (dismissing plaintiff's Section 1983 and Title VI claims after finding a school district's similar hair and grooming policy can be enforced in a racially neutral manner and, therefore, does not compel discrimination). And Gray does not plead he identifies with any other culture than Black. *See generally id.*

### F.  *Gray cannot state a viable First Amendment claim because hair length does not objectively communicate any message that enjoys First Amendment protection.*

Gray claims the District's hair length regulations for male students infringes on his First Amendment "right to express themselves [sic] freely without repercussions from the government." *See* Dkt. No. 45 at 127. However, the Fifth Circuit holds that the First Amendment does not shield a high school student's decision to wear long hair or any other chosen hair style. *See Karr*, 460 F.2d at 613-14 (relying in part on *Tinker*, 393 U.S. at 509); *Ferrell*, 392 F.2d at 704-05 (school district did not violate First Amendment by prohibiting male students from wearing the "Beatle type haircuts"). In doing so, the Fifth Circuit rejected the exact same argument made by Gray here, that "the wearing of long hair is symbolic speech by which the wearer conveys his individuality, his rejection of conventional values, and the like." *Karr*, 460 F.2d at 613-14. That is because the wearing of long hair or a particular hair style does not objectively communicate any message that enjoys constitutional protection under the First Amendment. *Id*. As the Fifth Circuit in *Karr* pointed out, "[f]or some, no doubt, the wearing of long hair is intended to convey a discrete message to the world. But for many, the wearing of long hair is simply a matter of personal

taste or the result of peer group influence." *Id*. at 613-14; *but see Woodley,* 2:21-CV-00364-RWS, attached in Appendix, Tab A.

Binding precedent makes this clear: whatever a person's motivation for wearing a particular hair style, it simply does not give rise to First Amendment protection. Without expressive conduct that is objectively understood as communicating a clear message, Gray's First Amendment claim is not cognizable, and this Court should dismiss it.

**G.    Gray's statutory claims should be dismissed because he is not entitled to mental anguish damages under Title VI or Title IX.**

Gray requests compensatory damages for past and future "severe mental anguish." *See* Dkt. No. 45 at 147.d. However, under recent Supreme Court authority, as a matter of law, Gray cannot recover mental anguish damages under statutes that were enacted pursuant to the Spending Clause – such as Title VI or Title IX. *See Cummings v. Premier Rehab Keller, PLLC*, 142 S. Ct. 1562, 1569-76 (2022). As Gray's injunctive and declaratory relief claims are now moot (*see* Part C *supra*), Gray is not entitled to recover any other damages under Title VI or Title IX and his claims should be dismissed. *Id*.

**H.    Gray cannot state a viable Title VI claim against the District because the facts alleged do not support an inference of intentional race discrimination.[7]**

  *1.    Gray's allegations of intentional discrimination amount to mere conclusory allegations.*

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be

---

[7] Gray mistakenly asserts he is bringing his Title VI claim under Section 1983, rather than Title VI itself. *See* Dkt. No. 45 at Part VI.

subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. In a purely conclusory manner, Gray asserts he was repeatedly targeted and punished by administrators after he refused to cut his hair but that "[o]ther non-Black students were not similarly targeted, surveilled, and punished for their hair." *See* Dkt. No. 45 at 93. In his complaint, Gray provides no further factual allegations to support this contention. *See generally id*. As stated above, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and that a complaint will not suffice if "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). And this is all that Gray offers. Thus, none of Gray's conclusory allegations against the defendants are entitled to the assumption of truth and his Title VI claim is legally insufficient and should be dismissed. *Iqbal*, 556 U.S. at 678.

In fact, Gray specifically pleads that his "identity as a Black male student creates a compounded burden not experienced by other students at NISD." *See* Dkt. No. 45 at 110. This allegation clearly negates any claim that the District or its employees acted with *intentional* race discrimination. This is because, if Gray is asserting he is a "class-of-one," he cannot (and does not) allege that all, or rather any other, Black students are disproportionately targeted under the District's hair length policy for wearing their natural hair in locs or any other "culturally significant" hair formation. This further defeats his claim under Title VI.

2.      *A.A. v. Needville Independent School District is of no help to Gray.*

Confusingly Gray mentions the decision in *A.A. v. Needville* (as well as a news article regarding the allegations of that lawsuit) on multiple occasions throughout his Complaint. *See* Dkt. No. 45 at 24-25,82-83. To the extent Gray relies on *A.A.* to argue the District's hair policy amounts to intentional race discrimination, he is mistaken. That is because *A.A.* is inapposite to the allegations asserted here.

*A.A.* involved a Native American student who wore his hair long as part of his religious beliefs and, at the age of 5, had never cut his hair. *A.A. v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 254 (5th Cir. 2010). Prior to enrolling in the District, A.A. sought a religious exemption to the District's hair length policy requiring male students to have short hair, providing documentation of a DNA test reflecting A.A.'s father's Native American descent. *Id.* at 255. However, the District denied the request, twice, and A.A. appealed the decision all the way to the Board both times. *Id.* After A.A. actually enrolled in the District, A.A. was immediately placed in ISS where he remained for one month until his family filed suit seeking injunctive relief, alleging A.A.'s rights under the federal constitution and the Texas Religious Freedom Restoration Act (TRFRA) were violated. *Id.* at 257. The district court granted A.A.'s request for a preliminary injunction, which the District appealed. *Id.* Importantly, the Fifth Circuit refused to address A.A.'s constitutional claims, but rather determined the case based on the TRFRA claims, ultimately affirming the district court's grant of injunctive relief. *Id.* at 273 ("Because we do not decide questions of a constitutional nature unless absolutely necessary to decide the case, and

because our holding under Texas law provides a non-constitutional basis sufficient to support the judgment below, we decline to address the remaining claims on appeal.").

In this case, Gray does not bring a claim under the TRFRA. *See generally* Dkt. No. 45. Nor does he allege any religious reasoning for his decision to wear his hair in locs, or wear his locs at a certain length. *Id.* As such, *A.A.* is inapposite and cannot form the basis to support Gray's intentional race discrimination claims.

### 3. *Tellingly, the CROWN Act has not been adopted by the Texas Legislature, let alone the U.S. Congress.*

The Creating a Respectful and Open World for Natural Hair (CROWN) Campaign was initiated in 2019 and seeks to enact law that would prohibit race-based hair discrimination "because of hair texture or protective hairstyles including braids, locs, twists or bantu knots in the workplace and public schools." https://www.thecrownact.com/about (last accessed on October 24, 2022). The CROWN Act was initially introduced as proposed legislation in the U.S. Senate under S.B. 3167 in January of 2020. It was referred to the Senate Judiciary Committee; however, it went no further. https://www.congress.gov/bill/116th-congress/senate-bill/3167/committees (last accessed October 24, 2022). The CROWN Act was introduced again under H.R. 2116 in the current Congressional session and was passed by the House on March 18, 2022, and referred to the Senate Judiciary Committee, on March 21, 2022, where it remains today. https://www.congress.gov/bill/117th-congress/house-bill/2116/actions (last accessed October 24, 2022).

Similarly, in Texas, the CROWN Act was filed as H.B. 392, and its companion

23

legislation of S.B. 77, in November of 2020, during the 87th Legislative Session. However, H.B. 392 was not voted on and S.B. 77 did not even make it out of Committee. https://capitol.texas.gov/billlookup/History.aspx?LegSess=87R&Bill=HB392 (last accessed October 24, 2022); https://capitol.texas.gov/billlookup/History.aspx?LegSess=87R&Bill=SB77 (last accessed October 24, 2022).

The fact that legislation regarding the exact claims Gray asserts in this case (*i.e.*, claims of discrimination based on a protected hairstyle associated with race) is currently being proposed and fought over at national and state levels is conclusive proof that the law, at this point in time, does not protect Gray's choice of hairstyle.

**I.      *As a student does not have a protected right to wear their hair at the length and in the style of their choice, required adherence to a dress code that regulates hair length does not violate Title IX.***

In *Karr*, the Fifth Circuit addressed a variety of constitutional challenges to a hair length policy, including those brought under the First Amendment, the Due Process Clause, and the Equal Protection Clause. *Karr*, 460 F.2d at 613-18. However, the Fifth Circuit did not limit its rule of *per se* constitutionality to only the constitutional challenges and arguments it expressly discussed. *Id*. at 617-18. Rather, the Fifth Circuit's *per se* rule – that a challenge to a school district's grooming policies is not cognizable in federal court – applies to any federal claim. *Id*. And, because his Title IX claim relies on the same facial challenge to the District's hair length policy, Gray's Title IX claim fails for the same reasons articulated in *Karr*. *See* Part C *supra*; *but see Woodley,* 2:21-CV-00364-RWS, attached in Appendix, Tab A.

## **PRAYER**

For the above reasons, Needville Independent School District respectfully requests that this Court grant its motion to dismiss, dismiss all claims against it, and grant any other relief it is entitled.

Respectfully submitted,

ROGERS, MORRIS, & GROVER, L.L.P.

JONATHAN G. BRUSH
State Bar No. 24045576
Fed. I.D. No. 619970
jbrush@rmgllp.com
AMY DEMMLER
State Bar No. 24092337
Fed. I.D. No.  3227731
ademmler@rmgllp.com
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone:    713/960-6000
Facsimile:    713/960-6025

ATTORNEYS FOR NEEDVILLE ISD

## CERTIFICATE OF CONFERENCE AND COMPLIANCE

Pursuant to Local Rule 6(B), a letter advising the District's intended motion to dismiss was sent to Plaintiff and filed with the Court, on September 8, 2022. *See* Dkt. No. 46. A hearing on the District's premotion letter was held on October 4, 2022, at which time the Court granted the District the ability to file its motion to dismiss Plaintiff's amended complaint. *See* Dkt. No. 48.

_____
Attorney for Needville ISD

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2022, a true and correct copy of the foregoing document was served on the following individuals via electronic mail:

Melissa Moore
*melissa@mooreandassociates.net*

Curt Hesse
*curt@mooreandassociates.net*

_____
Attorney for Needville ISD

26